People v Lewis (2026 NY Slip Op 01016)

People v Lewis

2026 NY Slip Op 01016

Decided on February 24, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 24, 2026

Before: Kern, J.P., Friedman, Gesmer, Pitt-Burke, O'Neill Levy, JJ. 

Ind. No. 72876/22|Appeal No. 5296|Case No. 2025-00616|

[*1]The People of the State of New York, Respondent,
vLeonard Lewis, Defendant-Appellant. 

Twyla Carter, The Legal Aid Society, New York (Hilary Dowling of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Larry Glasser of counsel), for respondent.

Order, Supreme Court, Bronx County (Raymond L. Bruce, J.), entered on or about January 9, 2025, which adjudicated defendant a level one sex offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C), reversed, on the law, without costs, and the sex offender adjudication vacated.
This case centers on three images of a depraved and disgusting kind created by the 58-year-old defendant over several months of his communications with his 16-year-old cousin. The particulars of the images are not relevant to the question before the court, except in one respect. Defendant sent his cousin images of adult bodies engaged in sexual conduct, with the 16-year-old victim's face superimposed on one of the figures in each image. Defendant was convicted under 18 USC § 1466A(a)(1)(A) which proscribes images created, adapted or modified to appear as though an identifiable minor is engaging in sexual conduct, otherwise known as "morphed" child pornography. We agree with our dissenting colleague that defendant's actions were deplorable. Nevertheless, we are constrained to find that this conduct does not give rise to criminal liability under the analogous New York State statute, Penal Law § 263.15, as it existed at the time of Mr. Lewis' conviction. Therefore, the court erred in adjudicating defendant a sex offender.
The conduct prohibited by Penal Law § 263.15 at the time of defendant's conviction was the production, direction, or promotion of "any obscene performance which includes sexual conduct by a child less than seventeen years of age." Thus, this statute criminalizes pornography that results from a performance by a child.[FN1] This type of pornography corresponds to one of the three varieties of child pornography recognized under federal law, which is established when "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct" (18 USC § 2256[8][A]). However, the conduct underlying defendant's federal conviction fell within 18 USC § 2256(8)(C), which is violated when "such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." At that time, New York's statute did not proscribe such conduct. Since then, Penal Law § 263.15 has been amended to include "a performance created or altered by digitization." However, this amendment did not go into effect until July 8, 2025, more than six years after Mr. Lewis' conviction. While this issue has not been addressed by our courts previously, we find persuasive the reasoning in decisions of two appellate courts of other states which held that proscriptions in their state statutes materially the same as the pre-2025 amendment version of Penal Law § 263.15 did not cover the sort of "morphed" image involved here (see Parker v State, 81 So3d 451, 453 [Fla Dist Ct App 2011]; State v Zidel, 156 NH 684, 695-696 [2008]). Following these decisions, the state legislatures in Florida and New Hampshire amended their child pornography laws to cover "morphed" images. As stated above, our legislature has already done so.
The People and the dissent argue that the statutory definition of "sexual conduct" includes "simulated" sex acts (see Penal Law § 263.00[3]) and that the statutory definition of "simulated" includes "the explicit depiction of [sex acts]" (see Penal Law § 263.00[6]). From these two definitions, they derive an expansive definition of "depicts" that would include within the scope of the pre-2025 amendment version of Penal Law § 263.15 virtually any visual representation of sexual conduct involving a minor, whether or not it includes a photographic image of the minor's face. Under the People's definition, even a drawing of stick figures purportedly engaged in sexual conduct, with some indication that one of the figures is a particular minor, would "depict" sexual conduct. This analysis ignores that the pre-2025 version of Penal Law § 263.15 was clearly intended only to criminalize pornography created by means of a performance by a child.
In addition, the dissent focuses on the language in Penal Law § 263.00(6) that defines "simulated" to mean a depiction that "creates the appearance" of sexual conduct. However, if the legislature had understood that language to include morphed images, there would have been no need for it to amend Penal Law § 263.15 to cover images of sexual conduct "created or altered by digitization" (L 2025, c 55, pt L, § 3). Indeed, the Court of Appeals and the United States Supreme Court both determined that the pre-amendment statute was aimed, as suggested by its plain language, at preventing the "exploitation of children as subjects in sexual performances" by criminalizing the possession of material in which actual children perform real or simulated sexual acts (People v Ferber, 52 NY2d 674, 682 n 3 [1981, Jasen, J., dissenting], revd sub nom. New York v Ferber, 458 US 747 [1982]; see also Ferber, 458 US at 759, 764 [noting the harm to children in the "permanent record of the children's participation" and the statute's focus on a definable class of material and "the welfare of children engaged in its production"]; Ashcroft v Free Speech Coalition, 535 US 234, 241, 249 [2002][noting that New York's pre-amendment statute addressed in New York v Ferber addressed "images made using actual minors" and that New York's pre-amendment statute prohibited images that "are themselves the product of child sexual abuse"]).[FN2] In Ferber, the US Supreme Court addressed a criminal defendant's First Amendment challenge to the pre-amendment Penal Law § 263.15. The Court noted that Penal Law § 263.00(3) includes "simulated" sexual intercourse (Ferber, 458 US at 751). However, based on the New York motion court's opinion, which was affirmed by this Court without decision (People v Ferber, 74 AD2d 558 [1st Dept 1980]), the Court clearly interpreted that language to refer to the simulation of a sexual act by an actual child. In determining whether the pre-amendment Penal Law § 263.15 violated the First Amendment to the extent that it prohibited material that might have artistic or scientific value, the Court balanced First Amendment interests against the state's interest in protecting children. In doing so, the Court noted that, "if it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized. Simulation outside of the prohibition of the statute could provide another alternative. Nor is there any question here of censoring a particular literary theme or portrayal of sexual activity. The First Amendment interest is limited to that of rendering the portrayal somewhat more 'realistic' by utilizing or photographing children" (Ferber, 458 US at 763 [emphasis added]).
The dissent argues that Penal Law § 263.15 implicates First Amendment issues. In Ferber, the Supreme Court noted that, for First Amendment purposes, "the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed" (Ferber, 458 US at 764). The Court found that because the pre-amendment Penal Law § 263.15 was limited to works depicting "sexual conduct by children below a specified age," the conduct met that requirement (id.). Since it is clear and confirmed by the courts of this State and the United States Supreme Court that the pre-amendment statute was aimed at preventing the creation and dissemination of material in which actual children performed actual or simulated sexual acts, applying the interpretation urged by our dissenting colleague would implicate the very First Amendment concerns she raises.[FN3]
The dissent also argues that our decision requires courts to consider the "parts or percentage" of a child's body depicted in the material at issue in order to determine whether it is covered by the prior version of Penal Law § 263.15. That is inaccurate. Rather, our decision finds that the pre-amendment statute does not cover morphed images at all, regardless of the body parts or percentages depicted.
Under Matter of North v Board of Examiners of Sex Offenders of State of N.Y. (8 NY3d 745, 753 [2007]), where there is overlap between the elements of the foreign offense and the New York statute but the foreign offense also criminalizes conduct not covered under the New York offense, a court must examine the conduct underlying the foreign conviction to determine whether that conduct would have constituted a crime in New York. If so, then the foreign conviction is a registrable offense. Here, the foreign offense criminalizes conduct not covered under the New York statute because the creation of "morphed" images of a minor engaged in sexual conduct did not violate Penal Law § 263.15 prior to July 8, 2025, the effective date of the amendment. Accordingly, defendant's adjudication as a sex offender must be vacated.
All concur except Pitt-Burke, J. who dissents in a memorandum as follows:Pitt-Burke, J. (dissenting). Article 263 of New York's Penal Law was enacted to protect children, the most vulnerable and defenseless New Yorkers. As evident throughout its legislative history, its purpose was to "make material containing children in sexual performances, no matter what the purpose, against the public policy of this State" (Assembly Mem in Support, Bill Jacket, L 1977, ch 910 at 21). By its terms, Penal Law § 263.15 states that "a person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, such person produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years of age."[FN4] "The crime is the offense against the child—the harm 'to the physiological, emotional, and mental health' of the child, . . . the 'psychological harm,' the invasion of the child's 'vulnerability.' These harms collectively are the consequential damages that flow from the trespass against the dignity of the child" (United States v Wiegand, 812 F2d 1239, 1245 [9th Cir 1987], citing New York v Ferber, 458 US 747, 758, 775-776 [1982], cert denied 484 US 856 [1987]).
Defendant concedes that he committed a sexual offense. However, he asserts that he is not subject to registration because Penal Law § 263.15 does not criminalize the production and distribution of the "morphed images"[FN5] he created. This argument highlights a pivotal concern before this Court. As technology has advanced, the obscene and predatory ways in which children have been preyed upon has progressed in tandem. I believe this Court's interpretation of the conduct prohibited by Penal Law § 263.15 must progress in lockstep, a determination to the contrary undermines the legislative intent behind its existence.
While I agree with the majority regarding the deplorable nature of defendant's conduct, its holding, provides that the production and distribution of morphed images has absolute First Amendment protection under the pre-amendment statute, thereby undermining, "New York's asserted interest in protecting children from psychological, emotional, and mental harm" (New York v Ferber, 458 US 747, 775 [1982, O'Connor, J. concurring]). As aptly stated by the Sixth Circuit, "morphed images . . . offer[ ] a difference in degree of injury but not in kind . . . . [M]orphed images may create many of the same reputational, emotional, and privacy injuries as actual pornography" (Doe v Boland, 698 F3d 877, 880-881 [6th Cir 2012], cert denied 570 US 904 [2013]). Here, the 16-year-old child victim, the defendant's cousin, undoubtedly suffered harm when his face was adapted into these images engaged in sexually explicit activity and those images subsequently distributed. The harm to the child was the legislature's chief concern in enacting article 263 of New York's penal code (Bill Jacket, L 1977, ch 910 at 30). I dissent.
Background
Defendant, who was 58 years old at the time of his offense, was convicted in federal district court in Pennsylvania, of production and distribution of obscene visual representations of the sexual abuse of children (18 USC § 1466A[a][1][A], [B]). Defendant's federal conviction stemmed from his sex-related communications with his 16-year-old cousin. During these communications, defendant expressed that he has wanted to have a sexual relationship with the victim since the victim was 12 years old; sent his victim sexually graphic text messages, some of which included photographs and videos; requested sexually graphic images of the victim; expressed desires to engage in sex acts with the victim; included photos and videos containing child pornography;[FN6] and sent three "morphed" images which were the grounds for his federal conviction.
Defendant was subsequently released in 2022 and began living in a re-entry facility in the Bronx. The Board of Sex Offenders prepared a Risk Assessment Instrument (RAI) in which it determined that defendant was required to register as a sex offender because his federal conviction "included all of the essential elements" of the registrable New York offense of promoting a sexual performance by a child (Penal Law § 263.15).
While defendant does not dispute that the federal statute and state statute have the same essential elements, he contends that his conduct is not criminalized under Penal Law § 263.15 because "morphed" images do not constitute child pornography within the meaning of the statute. Specifically, defendant contends that Penal Law § 263.15 requires that there be "actual sexual conduct by a child" and because the morphed images he created portray a child's face on an adult's body, his conduct does not fall within the statute. An argument the majority seemingly adopts.
Discussion
In 1995, New York enacted the Sex Offender Registration Act (SORA) requiring individuals convicted of certain sex offenses to register. SORA was enacted as a civil statute meant to protect members of the community, particularly children, by notifying them of individuals who may present a danger (Doe v Pataki, 120 F3d 1263, 1276-1278 [2d Cir 1997], cert denied 522 US 1122 [1998]).
When an individual is convicted of a sex offense in a foreign jurisdiction, a SORA court must conduct an analysis to determine whether the out-of-state offense is a registrable offense in New York (Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 753 [2007]). In doing so, the court must first compare the statutes to determine whether they have the same essential elements and if so, determine whether defendants conduct would have been criminalized under the New York Statute (id.).
Here, defendant concedes that the statute has all the same essential elements as the federal statute. Therefore, we are left to determine only whether defendant's conduct is criminalized under Penal Law § 263.15, and if he is, in turn, subject to registration pursuant to SORA (id.).
In Ferber, the United States Supreme Court held that state legislatures are entitled to "greater leeway in the regulation of pornographic depictions of children" (458 US at 756). Thus, when interpreting article 263, "our goal is to give force to the intent of the legislature and we therefore begin with the plain text—the clearest indicator of legislative intent. In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the legislature. We must also interpret a statute so as to avoid an unreasonable or absurd application of the law" (Bank of Am., N.A. v Kessler, 39 NY3d 317, 324 [2023] [internal citation omitted]).
Article 263 was introduced to prevent, "pernicious peddlers of child pornography . . . from preying on unsuspecting children," (Bill Jacket, L 1977, ch 910 at 30). From its inception, the statute sought to make material containing "children in sexual performances, no matter what the purpose, against the public policy of this state" (id. at 21). To achieve this goal, the legislature intended that article 263 be applied broadly to act as a shield to prevent the exploitation of innocent children by predatory adults, both known and strangers alike (People v Keyes, 75 NY2d 343, 348 [1990]). The statute must also be interpreted "as a whole, and all parts of an act are to be read and construed together to determine the legislative intent" (McKinney's Cons Laws of NY, Statutes § 97; Bank of Am., N.A., 39 NY3d at 324).
In determining what constitutes sexual performance under article 263, we must turn to the statutorily defined terms and apply those definitions uniformly within the statutory text (McKinney's Cons Laws of NY, Statutes § 97; Bank of Am., N.A., 39 NY3d at 324). Article 263 defines sexual performance as, "any performance or part thereof which . . . includes sexual conduct by a child less than seventeen years of age" (Penal Law § 263.00[1]). Sexual conduct, as defined at the time of defendant's offense, was "actual or simulated sexual intercourse, oral sexual conduct, anal sexual conduct, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals" (Penal Law § 263.00[3]).[FN7] Finally, simulated is defined as, an "explicit depiction [FN8] . . . which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals, or buttocks" (Penal Law § 263.00[6]).
When considering the above definitions as applied in the statutory text, defendant's conduct is clearly a violation of Penal Law § 263.15. To understand the severity of defendant's conduct, it is important to set forth the details of his actions. At issue, are three "morphed" images defendant created by adapting the underaged victim's face into extremely explicit sexually graphic images which are described in his federal presentence investigation report as follows:Image No. 1: "[A] cartoon rendering of a naked mature adult male with his legs spread. The male had a white liquid leaking from his exposed rectum. An image of [the 16-year-old victim's] face was placed onto the male's body."Image No. 2: "Appears to be naked male on his hands and knees. This male has an image of [the 16-year-old victim's] face placed onto the body. Another naked male is behind the first male with his hands on his shoulders. This individual has what appears to be an image of the defendant's face placed onto the body."Image No. 3: "Appears to be a naked adult male on his back. He is exposing an erection, and it appears there is ejaculate on his stomach. This individual has an image of [the 16-year-old victim's] face placed onto it. It appears another naked individual is up against him."
Defendant contends, and the majority credits, that these three images do not fall within the meaning of simulated sexual conduct under Penal Law § 263.15 because the images do not show sexual conduct by an actual minor. Stated plainly, defendant contends that superimposing the 16-year-old child victim's face on a morphed image engaged in sexually explicit conduct is not criminalized in New York.
To accept defendant's argument, we must not only ignore that the description of image No. 2 does not indicate that an adult's body was used, but also the statutory definition of simulated, "an explicit depiction . . . which creates the appearance of such conduct" (Penal Law § 263.00 [6] [emphasis added]) and sexual performance, "any performance or part thereof which . . . includes sexual conduct by a child less than seventeen years of age" (Penal Law § 263.00 [1]). Defendant's argument also forces this Court to draw an arbitrary distinction as to the percentage of a child's body that must be incorporated into a morphed image to constitute sexual performance by a child. Are we to say that a child is not as much of a child from the neck up as they are from the neck down, whereas here, the distributed images create the appearance of the 16-year-old victim engaging in sexual conduct, by adapting his face into the underlying image? When the statute is read as a whole, rather than piecemeal, an image that involves a minor and creates the appearance that they are engaged in sexual conduct is clearly penalized (McKinney's Cons Laws of NY, Statutes § 97; Penal Law § 263.15; Bank of Am., N.A., 39 NY3d at 324). The statute does not contemplate which portion of a child is used in the image, how much of the child's body is used or how realistic the image is (see Penal Law § 263.15). It simply requires an actual child victim, as is clear by the age requirement in the definition of sexual performance (Penal Law § 263.00[1]). These considerations are expressly relevant here, where the face used in the images was defendant's readily identifiable underage family member.
While we are constrained to the descriptions contained in defendant's federal presentence investigation report to make a determination, the majority's finding, is an unnecessary narrowing of the statute (People v Fraser, 96 NY2d 318, 327 [2001] ["By enacting article 263, the New York Legislature intended to 'employ broad measures to eradicate child pornography in all its forms'"] [internal citation omitted], cert denied 533 US 951 [2001]). Specifically, the majority finds that Penal Law § 263.15 does not criminalize morphed images "regardless of the body parts [of a child] or percentages depicted." Said differently, the majority contends that as long as an image can be considered morphed, it does not fall within the purview of the pre-amendment statute even if it would otherwise constitute the promotion of a sexual performance by a child. This in turn means that a morphed image that utilizes the body and face of a child with the arms of an adult is not criminalized under New York law, thus highlighting the shortcomings of the majority's position and its failure to adhere to the broad application of Penal Law § 263.15 the legislature intended (Bill Jacket, L 1977, ch 910 at 21).
Further, the majority's contention that the legislature has since amended Penal Law § 263.15 to criminalize morphed images misses the mark. As clearly highlighted in the session notes and bill jacket directly corresponding to the amendment, the language "created or altered by digitization" was introduced to address the rampant use of artificial intelligence (AI) in the creation of child pornography (Transcript of May 7, 2025 Hearing for 2025 NY Assembly Bill A3005C, enacted as L 2025 ch 55 at 137 ["I introduced . . . the New York State AI Child Safety Act to finally bring justice into the 21st century to close a dangerous loophole in our State's Penal Law that allow predators to exploit innocent victims through deep fake pornography and walk away with a slap on the wrist"]).
While morphed images can be created using artificial intelligence, this is not the sole method in which these images are created. Morphed images, as defined by the United States Supreme Court in Ashcroft v Free Speech Coalition,involve the creation of "virtual images . . . [to] alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children" (535 US 234, 242 [2002]).
It is also clear that the amended statute's inclusion of the language "created or altered by digitization" does not negate or replace the statutory definition of simulated (L 2025, ch 55, pt L, § 3, eff. July 8, 2025; Penal Law § 263.00[6]). As a result, contrary to the majority's contention, the legislature's 2025 amendment more readily indicates that it believed the conduct at issue here was already criminalized under the statute, rather than the amendment being implemented for its inclusion.
The majority's interpretation also serves as a complete disregard of the plain language of the statute and the legislature's intent to protect minors from predatory adults, essentially creating a carve out in the New York penal law for the predation of minors. However, as explained in further detail below, I believe defendant's conduct falls within the simulated sexual conduct prohibited under Penal Law § 263.15—specifically, it constitutes simulated lewd exhibition of genitals (Penal Law §§ 263.00[3], [6]).
As noted by the majority, Penal Law § 263.15 was aimed at protecting actual children from falling victim to the dissemination of material which depicts them engaged in actual or simulated sexual conduct. The statute's requirement that the conduct include an actual child simply means that the victim must be under the age of 17 (Penal Law § 263.15), presumably to ensure the statute would not criminalize conduct involving youthful-looking adults (Ferber, 458 US at 776 ["the particular vulnerability of children, afford the State the leeway to regulate pornographic material, the promotion of which is harmful to children, even though the State does not have such leeway when it seeks only to protect consenting adults from exposure to such material"] [Brennan, J. concurring]). Here, defendant created and distributed morphed images that included the actual face of a child victim and simulated the victim engaged in sexually explicit acts (see Penal Law §§ 263.15; 263.00[3], [6]). The actual child victim that the statute requires, and who suffered harm the majority seemingly deems inadequate to trigger the application of Penal Law § 263.15, is defendant's 16-year-old cousin.
At the time of the offense, article 263 defined sexual conduct as "actual or simulated sexual intercourse, oral sexual conduct, anal sexual conduct, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals" (Penal Law § 263.00[3] [emphasis added]), and simulated as, "the explicit depiction . . . which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals or buttocks" (Penal Law § 263.00[6] [emphasis added]). While the statute did not separately define "lewd exhibition of genitals" when it provided that such conduct would constitute "sexual conduct," courts have repeatedly utilized the six-factor test in United States v Dost (636 F Supp 828, 832 [SD Cal 1986], affd 813 F2d 1231 [9th Cir 1987], cert denied 484 US 856 [1987]) to determine whether images constitute "lewd exhibitions of genitals" (see Doe v Wilhelmina Models, Inc., 229 AD3d 128, 133 [1st Dept 2024]; People v Wheeler, 99 AD3d 1168, 1172 [4th Dept 2012], lv denied 20 NY3d 989 [2012]; People v Horner, 300 AD2d 841, 842-845 [3d Dept 2002]). Similarly, here, the legislature did not expressly define "simulated lewd exhibition of genitals." Therefore, I believe the Dost test, modified to incorporate the statutory definition of simulated, should be applied to determine whether the morphed images constitute "simulated lewd exhibition of genitals" (Dost, 636 F Supp at 832; Penal Law §§ 263.00 [3], [6]).
In applying this modified Dost test, we should consider whether the image creates the appearance that "the focal point of the visual depiction is on the child's genitalia or pubic area"; "whether the setting of the visual depiction is sexually suggestive"; whether the image creates the appearance of "the child . . . depicted in an unnatural pose, or in inappropriate attire, considering the age of the child"; whether the image creates the appearance of "the child . . . fully or partially clothed, or nude"; "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity"; and "whether the visual depiction is intended or designed to elicit a sexual response in the viewer" (id.). Regarding the last factor, we should consider "whether it is designed to elicit a sexual response in the viewer, albeit perhaps not the average viewer, but perhaps in the pedophile viewer" (Horner, 300 AD2d at 843 [internal quotation marks and citation omitted]).
As in Horner, this factor test would represent a nonexhaustive list that is to be applied in a manner which allows courts to make a fact intensive determination whether the conduct fits within the framework of Penal Law § 263.15 (Horner, 300 AD2d at 843). The application of this modified standard would ensure that the legislature's intent in enacting article 263 is met, while also guaranteeing that the statute is being applied in a manner that does not infringe on an individual's constitutional rights (see Ferber, 458 US at 773-774; Dost, 636 F Supp at 832).
In applying the modified Dost test to the facts of this case, defendant's conduct is prohibited under Penal Law § 263.15 (Penal Law §§ 263.00 [3], [6]; Dost, 636 F Supp at 832; Horner, 300 AD2d at 843). Here, defendant created three "morphed" images by superimposing the underaged victim's face onto the body of an adult male engaged in sexually explicit activities.
The first factor, whether the image creates the appearance that "the focal point of the visual depiction is on the child's genitalia or pubic area," weighs in favor of the images produced constituting simulated lewd exhibition of genitals (Dost, 636 F Supp at 832). Image No. 1, creates the appearance that the victim's genitals are the focal point of the visual depiction by superimposing the victims face onto the adult body. Specifically, image No. 1 creates the appearance that the 16-year-old victim has his legs spread while white liquid leaked from his exposed rectum.
The second factor, "whether the setting of the visual depiction is sexually suggestive," also weighs in favor of the images qualifying as simulated lewd exhibition of genitals (id.). Images Nos. 1, 2, and 3 are sexually suggestive in depicting various sexually explicit actions; image No. 1 depicts a body with the legs spread and an exposed rectum; image No. 2 depicts a naked male on his hands and knees while another male is behind him with his hands on his shoulders; and image No. 3 depicts a naked male on his back exposing an erection.
The third factor, whether the image creates the appearance of "the child . . . depicted in an unnatural pose, or in inappropriate attire, considering the age of the child" weighs in favor of the images produced constituting simulated lewd exhibition of genitals (id.). Images Nos. 1 and 2 create the appearance of the child in an unnatural pose (id.); image No. 1 creates the appearance of the 16-year-old victim with his legs spread and rectum exposed; and image No. 2 creates the appearance of the 16-year-old victim laid on his back with apparent white liquid on his stomach.
The fourth factor, whether the image creates the appearance of "the child . . . fully or partially clothed, or nude" weighs in favor of the images constituting simulated lewd exhibition of genitals (id.). All three images superimpose the victims face onto a nude body, creating the appearance that the 16-year-old victim is nude.
The fifth factor, "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity" also weighs in favor of the images constituting simulated lewd exhibition of genitals (id.). All three images suggest a willingness to engage in sexual activity based on the positions in which the body that the victim was superimposed onto are positioned (id.).
Finally, the sixth factor "whether the visual depiction is intended or designed to elicit a sexual response in the viewer" is to be analyzed not by the average viewer, but rather the pedophilic viewer (Dost, 636 F Supp at 832; Horner, 300 AD2d at 843). All three morphed images were created in a manner to elicit a reaction in the viewer as the bodies were posed in sexually suggestive positions (Dost, 636 F Supp at 832), and weigh in favor of defendant's conduct constituting simulated lewd exhibition of genitals. While an average viewer would likely be alarmed and repulsed by the "morphed" images at issue, the pedophile viewer would not be (id.; Horner, 300 AD2d at 843). Therefore, considering this modified Dost test, defendants conduct in creating and distributing the three morphed images of the victim qualifies as simulated sexual conduct and is criminalized under Penal Law § 263.15 (id.).
Critically, the United States Supreme Court found that Penal Law § 263.15 required a case-by-case analysis to ensure its application would not run afoul with a defendant's First Amendment rights (Ferber, 458 US at 773-774). Contrary the majority's contention, the application of the modified Dost test ensures that defendant's First Amendment rights are not infringed upon while also ensuring the legislature's intent in enacting article 263 are met (Dost, 636 F Supp at 832; Penal Law §§ 263.00 [3], [6]; Bill Jacket, L 1977, ch 910 at 30).
Unlike the majority's holding, this finding does not rely on the case law of foreign jurisdictions to determine whether defendant's conduct is prohibited under the law of this state. Nevertheless, the cases relied on by the majority, State v Zidel (156 NH 684 [2008]) and Parker v State (81 So3d 451 [Fla Dist Ct App 2011]), are distinguishable from this case, both by their facts and by their First Amendment implications.Zidel and Parker did not involve the distribution of morphed images. Rather, these cases implicated the First Amendment because they involved the "mere" possession of morphed images which included a child from the neck up placed on the body of an adult involved in a sexually explicit activity (Zidel, 156 NH at 685; Parker, 81 So3d at 452). In Zidel, the court found that since the defendant only possessed the image and there was no harm suffered by the child whose face was used, his possession of the image was protected under the First Amendment (Zidel, 156 NH at 696). In Parker, the court also credited the fact that the defendant was only charged with possession as the reason the "morphed" image was not prohibited by the statute (Parker, 81 So3d at 455). While I appreciate the Parker and Zidel courts' analyses, it is not the practice of this Court to blindly follow foreign courts' nonbinding interpretation of foreign statutes when interpreting our penal law.
The possession of child pornography has First Amendment implications, which is why statutes like Penal Law § 263.15 require a fact intensive application to ensure that it does not interfere with a defendant's constitutional rights (see Ashcroft, 535 US at 257-258; Ferber, 458 US at 773-774). In Zidel, the court found that defendant's possession was protected under the First Amendment because there was "no demonstrable harm . . . to the child whose face is depicted in the image" (Zidel, 156 NH at 693). The same cannot be said here, the harm to the victim was felt immediately as the images were distributed.
Although Parker and Zidel similarly involve morphed images, they are readily distinguishable as the defendant here was convicted of both the production and distribution of the images (see Zidel, 156 NH at 685; Parker, 81 So3d at 452). Therefore, defendant's conduct fits squarely within the purview of article 263.
Article 263 and SORA's purpose are two sides of the same coin,[FN9] the protection of the community, particularly minors, from the predatory individuals who commit sex offenses (Bill Jacket, L 1977, ch 910 at 30; L 1995, ch 192, § 1). Article 263 was meant to be broadly applied to eradicate child pornography from within our border (Keyes, 75 NY2d at 348). As stated in its legislative history, "[w]hat deep scars will etch themselves into the psyches of these children? What chance for normal social adjustment will exist for them. These youngsters have no adequate means to protect themselves. We must supply this protection." (Bill Jacket, L 1977, ch 910 at 63). As arbiters of the law, we should apply law in the manner intended by the legislature rather than a manner that circumvents legislative intent. It is as true today as it was when article 263 was enacted, children are the most vulnerable New Yorkers, and we must protect them as they are ill-equipped to protect themselves. As a result, I would affirm the SORA court's determination to adjudicate defendant as a level one offender. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 24, 2026

Footnotes

Footnote 1: Contrary to the dissent's claim, our decision gives meaning to the plain language of the applicable statute, which covers "conduct by a child." Nor do we discount the harm suffered by the victim in this case, as the dissent implies. Nevertheless, and despite our shared abhorrence of defendant's behavior, we disagree with the dissent that the pre-amendment statute criminalized his acts.

Footnote 2: Thus, the dissent is incorrect in stating that we adopt the position that the pre-amendment Penal Law § 263.15 is violated only if there is "actual sexual conduct by a child." Rather, our position is that it is violated only if a child performs an actual or simulated sexual act.

Footnote 3: The dissent mischaracterizes our discussion of these First Amendment cases as "holding . . . that the production and distribution of morphed images has absolute First Amendment protection under the pre-amendment statute." We do not so hold. Rather, our discussion of these cases merely highlights that these courts interpreted the pre-amendment Penal Law § 263.15 as criminalizing the production, direction or promotion of any obscene performance involving sexual conduct, whether real or simulated, by an actual child.

Footnote 4: In July 2025, this statute was modified to address the use of artificial intelligence in creating child pornography and now reads as: "A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, such person produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years of age, including a performance created or altered by digitization" (L 2025, ch 55, pt L, § 3, eff. July 8, 2025).

Footnote 5: According to Ashcroft v Free Speech Coalition, morphed images refer to "means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children" (535 US 234, 242 [2002]).

Footnote 6: While defendant communications included child pornography, his federal conviction stemmed from the production and distribution of morphed images and not the other pornographic images. 

Footnote 7: The definition of sexual conduct has since been revised and now reads as: "actual or simulated vaginal sexual contact, oral sexual contact, anal sexual contact, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." (Penal Law § 263.00 [3], L 2023, ch 777, § 56, eff. Sept 1, 2024).

Footnote 8: According to Merriam-Webster's dictionary, a depiction is "a representation in words or images of someone or something." https://www.merriam-webster.com/dictionary/depiction.

Footnote 9: While Penal Law § 263.15 exists to punish the sexual conduct, SORA exists to protect the community from those who commit such conduct.